IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULA K. GRANT,

        Plaintiff,

v.                                                            CIV 02-1166 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

        Plaintiff Paula Grant worked as a clerk, as a window dresser, in restaurant settings, in a factory, and as a sales clerk. Some of the positions involved supervisory or managerial duties. In October 1998, at age forty-five, she quit working due to pain. She has a seventh-grade education. *See e.g., Administrative Record* ("*Record*") at 27-33, 75, 80, 99. In August 1999 she applied for disability benefits due to "constant pain" from her lower back, abdomen, and bone spurs in her feet, and a resulting inability to concentrate. She alleged that although she first became ill in 1964, she became disabled as of the day she quit working. *See e.g., id.* at 73-74, 63, 65, 69.

        The Administrative Law Judge ("ALJ") Carol A. Connor found that Plaintiff has the residual functional capacity to perform a full range of sedentary work and found Plaintiff not disabled at Step 5, under the Medical-Vocational Rule 201.19 or "grids." *Id.* at 14-15. The Appeals Council declined review on July 25, 2002, thereby rendering the ALJ's decision final. *Id.* at 4-5.

        This matter is before the Court on Plaintiff's Motion to Reverse or Remand, where she

asserts that the ALJ committed four interrelated legal errors. *See Docs. 12, 13.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).

This case turns on whether the correct legal standards were applied. I have read and carefully considered the entire record. Because I find that ALJ Connor did not apply to correct legal standard for assessing pain at Step 4, I will remand the matter to the Commissioner for further proceedings.

### I. ALJ Connor's Analysis Of Plaintiff's Pain & Credibility

In her summarization of her findings, the ALJ found Plaintiff's assertion about her limitations "not totally credible for the reasons set forth in the body of the decision." *Record* at 15 (finding # 5). In the body of the opinion, ALJ Connor discusses Plaintiff's medical history and the reasons for not crediting Plaintiff. So that the reasoning is not taken out of context, I set it forth in full.

> Mrs. Grant has numerous symptoms and complaints, but I am unable to say with any degree of certainty that her impairments prevent [her] from engaging in all categories of work. In reaching this conclusion, I note at the outset that she has no non-exertional impairment except for her allegations of pain. She did undergo a

psychiatric evaluation by Carlos Balcazar, MD, at the request of the Commissioner, but Ms. Grant stipulated at the hearing that she did not claim to have a mental disorder that impaired her ability to work.  The primary focus of her alleged disability is subjective pain, but even then it is apparent that her pain syndrome is primarily exertional in nature.

The claimant has a history of multiple recurrent abdominal symptoms, including abdominal pain on the left and radiating pain to the right lower quadrant.  Despite multiple testing procedures, there was not clear diagnosis, and in November 1996 she was admitted for laparotomy surgery for diagnostic purposes and lysis of adhesions from previous abdominal surgical procedures.  At that time Ms. Grant also complained of sacral and mid back pain with radiation into both buttocks (Exhibit 1 F).  There was no evidence of endometriosis, as previously expected, or other lesions.

The pain abated following the surgery, but in August 1999 she returned with complaints of severe abdominal pain.  Robert J. Lowe, MD, who examined Ms. Grant at the request of her regular doctor, was unable to reach a diagnosis, noting that her pain symptoms did not appear to result from adhesions, and that some of her symptoms "don't make a whole lot of sense" (Exhibit 11F).  A colonoscopy procedure was attempted on March 15, 1999, but it could not be completed because of a sharp colonic angulation which was felt to be the result of adhesions (Exhibit 7F).  Flexible sigmoidoscopy was previously non-diagnostic because the scope could not be fully advanced because of the angulation of the sigmoid, and the only diagnostic impressions were of internal hemorrhoids and sharp sigmoid curves.  A barium enema was also non-diagnostic.  She has been treated only with pain and colon relaxant medications (Exhibit 6E).  All abdominal and pelvic scans are normal (Exhibits 9F and 8F).

Although Ms. Grant testified at some length of somatic complaints of disabling abdominal pain, there is simply no substantial evidence supporting her complaints.  Neither is there any significant evidence that her abdominal complaints would preclude her from engaging in substantial gainful activity, at least at sedentary exertional levels.  Such is my conclusion following my evaluation of the three-step procedure mandated by *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987); and *Williams v. Bowen,* 844 F.2d 748 (10th Cir. 1988).

>Ms. Grant also alleges that she has constant low back pain that prevent her from working, but there are minimal objective signs or findings to support her complaints. She has been tested repeatedly for a causative factor for her subjective complaints, but all tests have been essentially negative. Reflexes have been consistently symmetrical and active; MRI scans have been unremarkable, with no disc herniation, bulging, stenosis or neural foraminal narrowing (Exhibit 3F). Bone scans of the spine are normal, and there are no neurologic nor vascular deficits. The only significant finding related to her low back pain are EMG findings of denervation of the muscles supplied by recurrent branches of the lumbar spine (Exhibit 2F). There is no evidence of radiculopathy of the lower extremities, no abnormal straight leg raising tests, nor significant limitations as to the range of motion of the back. Although I do not question Ms. Grant's complaints of low back pain, there are simply no clinical or objective signs or findings to support a conclusion that the back pain disables her from work, certainly not from sedentary work.
>
>Although it is documented that she fell and injured her tail bone and, according to her testimony, must make accommodations as to the position in which she sits, there is no sufficient evidence that she would not be able to work in a seated position for two hour intervals, and for a total of six hours during a regular eight-hour work day.
>
>The claimant does have a significant impairment of her lower extremities so bilateral heel spurs and degenerative changes of her right ankle. Testing on March 16, 1998, revealed "classic" Plantar fascitis and an intermetatarsal neuroma (Exhibit 4 F). She has been treated symptomatically with injections, exercises and arch supports, but she continues with pain in prolonged standing or walking. Considering all of the evidence and testimony, I am inclined to concur with the determination made by Stavros P. Karabiniras, MD, who evaluated the claimant's medical record for the Disability Determination Services on October 25, 1999, that Ms. Grant is limited to about two hours standing and walking during an eight-hour work day (Exhibit 12). Such a limitation precludes Ms. Grant from performing light or higher exertional work which would require her to stand and/or walk for up to six hours during a regular work day.

*Id.* at 12-14 (grammatical and citation format corrections added).

**II. Analysis**

Plaintiff first asserts that ALJ Connor found her abdominal pain nonsevere at Step 2, *see Doc. 13* at 3, and failed to consider this condition "past [S]tep 2 of the sequential evaluation process," *id.* at 4, thereby committing legal error and requiring remand, *id.* Plaintiff next asserts that the methodology ALJ Connor employed in making her credibility finding is erroneous as a matter of law because it is conclusory, as opposed to a specific discussion that is affirmatively linked to substantial evidence. She further contends that ALJ Connor erred in failing to discuss Plaintiff's testimony that her prescribed Valium and Darvocet make her drowsy. Plaintiff finally argues that the ALJ erroneously relied on the grids in light of Plaintiff's nonexertional impairments of pain and, presumably, drowsiness. *See Doc. 13* at 4-6.[1]

*A. ALJ's Failure To Mention Abdominal Pain At Step 2 Is Harmless*

I disagree with Plaintiff's characterization that ALJ Connor specifically found her abdominal pain nonsevere at Step 2. As I read the opinion, ALJ Connor fails to mention the complaints of abdominal pain in her Step 2 analysis at all, but then goes on to consider the condition at Step 4. *See Record* at 12-14. For clarity, the better practice may be for an ALJ to discuss all of the alleged impairments at Step 2, or to assume Step 2 is met and move on in the analysis. Nevertheless, ALJ Connor did in fact consider Plaintiff's complaints of chronic abdominal pain at Step 4, and Plaintiff makes no argument that her abdominal pain meets any Listing at Step 3. Moreover, a finding of severity at Step 2 does not compel the conclusion that

---

[1] Drowsiness may be a nonexertional impairment. *E.g., Gallegos v. Apfel,* 3 Fed. Appx. 748, 749 (10th Cir. 2001); *see also Williams,* 844 F.2d at 752 ("Nonexertional limitations may include or stem from sensory impairments; . . . drug dependence; dizziness; and pain."); 20 C.F.R. §§ 404.1569a (c)(ii)-(iii) (difficulty "maintaining attention or concentrating" or "understanding or remembering detailed instructions" are some examples of nonexertional impairments).

the presence of the condition establishes any limitations. I therefore find no legal error that warrants remand.[2] To remand for that purpose alone would be an empty exercise.[3]

### B. The Pain/Credibility Analysis Stops At The Objective Prong

Under the law of this Circuit, there are separate inquiries an ALJ must make in assessing assertions of disabling pain at Step 4. The first, which ALJ Connor undertook and is similar to the Step 2 analysis, is entirely objective. That is:

> Under the first prong of the *Luna* analysis, the claimant has the burden to demonstrate a pain-producing impairment by objective medical evidence. *Luna,* 834 F.2d at 163. In connection with this requirement, we have said, "[t]he first component of this inquiry, the objective impairment prerequisite, is fulfilled without regard to subjective evidence" and without assessing the claimant's credibility. *Williams,* 844 F.2d at 753.

*Corber v. Massanari,* 20 Fed. Appx. 816, 820 (10th Cir. 2001). However, the objective medical evidence can establish a pain-inducing impairment and satisfy the first inquiry, even if the cause of

---

[2] *See Brumbelow v. Apfel,* 2001 WL 1543852 at *7 (N.D.Tex. 2001) ("Plaintiff's first point of error is that the ALJ erred in finding that he did not have a severe back impairment. . . . [I]n the part of his decision summarizing his findings, the ALJ stated that Plaintiff had 'severe low back and leg pain' secondary to his back surgeries. . . . Although the ALJ did not explicitly state that Plaintiff's back impairment was severe, this fact is clearly borne out by his decision and by the fact that he proceeded through the Commissioner's entire five-step analysis for disability cases."); *see also Corber v. Massanari,* 20 Fed. Appx. 816, 820 n.3 (10th Cir. 2001) ("due to the incremental nature of the sequential process, a finding at step two that medical evidence establishes an impairment, does not preclude, and may be entirely consistent with, a contrary finding in an evaluation of severity of disabling pain under *Luna,* or a finding at step four that there is no objective evidence of a disabling impairment that prevents the claimant from performing past relevant work."); *Social Security Ruling* 96-3p, 1996 WL 374181 at **1, 2 (policy statement two provides: "An individual's symptoms [such as pain] may cause limitations and restrictions in functioning which, when considered at step 2, may require a finding that there is a 'severe' impairment(s);" however, if ALJ is unable to clearly determine this Step, the Ruling later states that he or she "must continue to follow the sequential evaluation process").

[3] *See Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."); *Mays v. Bowen,* 837 F. 2d 1362, 1364 (5th Cir. 1988) (same).

the pain is unknown.[4]

Furthermore, even if the objective medical evidence alone does not substantiate the subjective complaints of pain, under the law of this Circuit and the applicable regulations, an ALJ is nonetheless "obligated to evaluate those subjective complaints," *id.,* applying the appropriate factors, *id.* at 821.[5]  Failure to do so, as here, is legal error.  *Nieto v. Heckler,* 750 F.2d at 59, 61 (10th Cir. 1984).

Finally, I note that ALJ Connor apparently disregarded Dr. Balcazar's psychological report in its entirety because Plaintiff withdrew her mental impairment allegation.  However, his assessment does appear to be relevant.[6]

---

[4]  *See id.* (in the Step 2 inquiry, the ALJ stated that the "medical evidence establishes that claimant has . . . chronic low back pain and right hip and leg pain, etiology unknown;" finding that the ALJ did not impermissibly use later credibility finding to enter into the objective analysis, Tenth Circuit stated that the "finding that the medical evidence establishes pain, albeit with an unknown cause, is in complete accord with" the first component of the *Luna* inquiry).

[5]  *See also e.g., Luna,* 834 F.2d at 164-65; *Nieto,* 750 F.2d at 61; *Social Security Ruling 96-7p*, 1996 WL 374186 at **4, 6 ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects;" "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence").  For the credibility analysis factors see, for example, *Qualls v. Apfel,* 206 F.3d 1368 (10th Cir. 2000) (factors to consider under *Kepler v. Chater,* 68 F.3d 387 (10th Cir. 1995));  *Allen v. Apfel,* 2000 WL 796081 at *2 (10th Cir. 2000) ("In reaching his conclusion, the ALJ considered and discussed plaintiff's medical history, including the lack of objective medical evidence, the lack of any ongoing medical treatment for her pain, and the lack of medication for severe pain, . . .[ and her] daily living activity report. . . . Contrary to plaintiff's assertion, the ALJ did not ignore *Luna* and discount her pain allegations based solely on a lack of supporting objective medical evidence"); *Ruling 96-7p,* (extensive discussion of analytical factors).

[6]  *Ruling 96-7p,* at *5 (among factors to consider are "Statements and reports from the individual and *from treating or examining physicians or psychologists* and other persons *about the individual's* medical history, *treatment and response,* prior work record and efforts to work, daily activities, and other *information concerning the individual's symptoms* and how the symptoms affect the individual's ability to work.) (emphasis added).

7

### *C. Reliance On Grids*

Having undertaken an incomplete analysis of pain and credibility, reliance on the grids is also suspect. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993). As noted above, drowsiness can qualify as a nonexertional impairment, but the ALJ's decision fails to discuss that assertion. The grids cannot be used conclusively if a claimant presents evidence of a nonexertional impairment that significantly limits her ability to work a full range of sedentary work. *See e.g, Ragland v. Shalala,* 992 F.2d 1056, 1058 (10th Cir. 1993); *Williams,* 844 F.2d at 752.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 12)* is GRANTED, and the matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.